UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

RACHEL POFF,

Plaintiff,

v.

WELLPATH CORP., et al.,

Defendants.

Case No. 1:25-cv-988

Hon. Hala Y. Jarbou
Chief U.S. District Judge

**REPORT AND RECOMMENDATION**

## I. Introduction

This Report and Recommendation addresses the following:

- Defendant Wellpath's motion to dismiss based on bankruptcy discharge, ECF No. 6, Plaintiff's response in opposition, ECF No. 9, and Wellpath's reply, ECF No. 14; and
- Defendants Dr. Jerkins[1] and RN Thomas's motion to dismiss, ECF No. 16, Plaintiff's response in opposition, ECF No. 20, and Defendants' reply, ECF No. 21.

In August 2025, Plaintiff Rachel Poff filed a verified civil complaint under 42 U.S.C. § 1983 alleging that Defendants violated her rights under the Eighth and Fourteenth Amendments while she was incarcerated at Berrien County Jail in

[1] Plaintiff spells Defendant's name as Dr. Jenkins throughout the Complaint. In their motion to dismiss, Defendants assert that the correct spelling is Dr. Jerkins. ECF No. 16, PageID.284.

Berrien, Michigan, in 2022. ECF No. 1. Plaintiff also asserts state law claims for intentional infliction of emotional distress. This case concerns the events leading to the tragic stillbirth of Ms. Poff's fetus. Plaintiff asserts that Defendants denied her necessary emergency prenatal care, resulting in the death of her unborn child and a subsequent traumatic delivery in the Berrien County jail toilet.

Defendant Wellpath moves for dismissal based upon the May 1, 2025, United States Bankruptcy Court for the Southern District of Texas final confirmation order discharging and releasing claims against Wellpath. ECF No. 6. Wellpath argues that the claims asserted by Plaintiff should be dismissed with prejudice based upon the Bankruptcy Court's final order.

Defendants Oscar Jerkins, M.D., and Karen Thomas, R.N., also move for dismissal based upon the Chapter 11 plan of reorganization. Alternatively, Defendants Jerkins and Thomas argue they are entitled to dismissal pursuant to Fed. R. Civ. P. 12(b)(6).

## II. Factual Allegations

Ms. Poff's complaint sets forth the alleged events leading to the tragic delivery of her stillborn fetus.

In July 2022, Plaintiff was incarcerated in the Berrien County Jail. Plaintiff says that Defendants determined she was pregnant on July 8, 2022. ECF No. 1, PageID.4. She states that she attended a pregnancy medical check-up on July 21, 2022, and returned to Berrien County Jail with specific printed pregnancy care instructions. *Id.* Plaintiff says Defendants were provided the instructions that

specified any signs of vaginal bleeding during the pregnancy required immediate emergency room visit and care. *Id.*, PageID.5.

Next, Plaintiff asserts that she was transferred to Inter-Care Women's Health Center for another scheduled medical appointment on August 18, 2022. Plaintiff says that the medical report from that visit noted that Plaintiff was "Rh negative status during pregnancy, third trimester." *Id.* Plaintiff asserts Defendants were provided with the record of the visit and additional printed pregnancy care instructions that again stated Plaintiff should be brought to the ER for any instance of vaginal bleeding. *Id.*

Plaintiff contends that on September 5, 2022, she began experiencing vaginal bleedings and promptly requested medical assistance from RN Thomas. *Id.* Plaintiff says she told RN Thomas that "she was bleeding vaginally and was Rh negative that she needed a RhoGAM injection, which was designed to prevent a spontaneous abortion of the fetus." *Id.* Plaintiff asserts that RN Thomas refused to order transport to the ER or to administer a RhoGAM injection. *Id.*

Plaintiff describes that she continued to bleed vaginally over the next four days. *Id.*, PageID.6. Plaintiff says she told Defendants each day about the bleeding and asked Defendants to be transported to an ER and to receive a RhoGAM injection. *Id.* Plaintiff asserts that Defendants continued to refuse to transport her to an ER or to administer the RhoGAM injection. *Id.* Plaintiff says she could feel the fetus kicking and moving around in her abdomen during September 5, 6, and 7, 2022. *Id.*

However, Plaintiff describes that on September 9, 2022, she could no longer feel any fetal movements. *Id.*, PageID.7.

Additionally, Plaintiff states that her relatives called Sheriff L. Paul Bailey and conveyed their concerns. *Id.* Plaintiff says Defendants finally agreed to send her to an ER for medical treatment on September 9, 2022. *Id.* Plaintiff describes that on September 9, 2022, an ultrasound at the ER of Lakeland Medical Center found that the fetus no longer had a heartbeat. *Id.* Plaintiff says the ER administered a RhoGAM injection and returned Plaintiff to the jail. *Id.*

Plaintiff states that she began experiencing labor in her cell on September 10, 2022. *Id.* Plaintiff asserts that Defendants were notified of her condition, but they refused to provide care. *Id.* Plaintiff describes that she delivered the fetus while using the toilet. *Id.* Plaintiff says that she "fished the dead fetus from the toilet bowl and wrapped it in a garbage bag." *Id.*

Finally, Plaintiff asserts that a sympathetic deputy gave her a sheet to wrap the dead fetus in on September 11, 2022. *Id.* Plaintiff says the same deputy transported the fetus to Plaintiff's parents for a proper burial. *Id.* Plaintiff claims Dr. Jerkins never visited, treated, or examined Plaintiff for her serious medical condition during the pregnancy. *Id.*, PageID.8. Plaintiff asserts that she has attempted suicide due to the trauma inflicted by Defendants. *Id.*

## III. Motion to Dismiss

The Federal Rules provide that a claim may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a

Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). Put differently, if plaintiffs do "not nudge[] their claims across the line from conceivable to plausible, their complaint must be dismissed." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

In determining whether a claim has facial plausibility, a court must construe the complaint in the light most favorable to the plaintiff, accept the factual allegations as true, and draw all reasonable inferences in favor of the plaintiff. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). Those factual allegations "must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (internal citations omitted). "When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion so long as they are referred to in the Complaint and are central to the claims contained therein." *Id.*

## IV. Analysis

### A. Chapter 11 Bankruptcy

First, the three remaining Defendants argue that the claims against them should be dismissed based on the release of claims in Wellpath's bankruptcy plan.

On May 1, 2025, the United States Bankruptcy Court for the Southern District of Texas entered an Order Confirming the First Amended Joint Chapter 11 Plan of Reorganization of Wellpath Holdings, Inc. and Certain Debtors Affiliates.

The order discharges Wellpath's debt that arose before May 1, 2025. The Order provides, in pertinent part:

> any Holder of a Claim against or Interest in the Debtors that did not check the "Opt Out" box on the applicable Ballot or Opt Out Form or otherwise objected to the Third-Party Release, returned in advance of the Voting Deadline (or within 60 days after the Confirmation Date for incarcerated individuals), would be deemed to have expressly, unconditionally, generally, individually, and collectively consented to the release and discharge of all Claims and Causes of Action against the Debtors . . . .

ECF No. 6-1, PageID.59.

Wellpath argues that Plaintiff's Complaint must be dismissed under the terms of the Bankruptcy Court's confirmation order because Plaintiff failed to opt out or object to the release of claims. In response, Poff asserts that Wellpath has failed to provide the Court with evidence that it provided Poff the required notice and opportunity to opt out. Additionally, Poff asserts that there is a question regarding whether Wellpath had insurance coverage at the time of the alleged constitutional violations.

As a starting point, the timeline of events will help understand Poff's response to Wellpath's motion. Wellpath Holdings, Inc. filed its Voluntary Petition for Non-Individuals Filing for Bankruptcy in the U.S. Bankruptcy Court for the Southern District of Texas on Nov. 11, 2024. ECF No. 14-1, PageID.246. As noted above, the confirmation order was entered on May 1, 2025. ECF No. 6-1, 46, 59. Poff's attorneys filed her civil complaint on Aug. 21, 2025 – approximately 112 days after the entry of the confirmation order. ECF No. 1. Her allegations, however, related to events in July through September 2022. *Id.*, PageID.4-6.

Under 11 U.S.C. § 1141, the confirmation of a plan "discharges the debtor from any debt that arose before the date of such confirmation." 11 U.S.C. § 1141(d)(1)(A). A discharge under Chapter 11 "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived." 11 U.S.C. § 524.

The U.S. District Court for the Eastern District of Pennsylvania recently explained the procedure to be used in a case where a plaintiff seeks to hold Wellpath liable for conduct that occurred before the filing of the bankruptcy petition.

> Wellpath was discharged from liability by the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Bankruptcy Court"), for claims that arose prior to November 11, 2024.[6] *See In Re Wellpath Holdings, Inc.*, No. 24-90533 (Bankr. S.D. Tex.), Dkt. Nos. 2596, 2679, 2680; *see also* 11 U.S.C. § 524(a)(2) ("A discharge in a [Chapter 11 bankruptcy] case ... operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived."). As part of Wellpath's Chapter 11 Reorganization Plan (the "Plan"), a

> Liquidating Trust has assumed Wellpath's liability "for all General Unsecured Claims," including personal injury and wrongful death claims—such as those pursued by Smith—covered by the discharge injunction. *See* Order Confirming Ch. 11 Plan, *In re Wellpath Holdings*, No. 24-90533 (Bankr. S.D. Tex. May 1, 2025), Dkt. No. 2596 at 107 (Assumption of General Unsecured Claims by the Liquidating Trust). To be eligible for compensation from the Liquidating Trust, a claimant must "have timely filed, or have been deemed to have timely filed, or have obtained appropriate leave from the Bankruptcy Court to file late, a Proof of Claim with the Bankruptcy Court" that is signed under penalty of perjury.[ ] *See* Trust Distribution Procedures, *In re Wellpath Holdings*, Dkt. No. 2679 at 351; *see also Howard v. Wellpath, LLC*, No. 23-5140, 2026 WL 881708, at *7 n.12 (E.D. Pa. Mar. 31, 2026) ("Howard should note that he may not be able to recover any damages from the Liquidating Trust unless he has filed a proof of claim."). Smith does not allege that he filed a proof of claim in accordance with the Plan procedures. Further, nothing in the record nor the Bankruptcy Court's docket suggests that he filed a proof of claim. Accordingly, his claims against Wellpath based on pre-petition conduct will be dismissed. *See Pew v. Letizio*, No. 24-5981, 2026 WL 838309, at *1 (E.D. Pa. Mar. 26, 2026) ("Because Pew's claim arises from alleged conduct in 2022, it is a preconfirmation claim subject to the confirmed plan and discharge injunction. Pew therefore may not continue this action against Wellpath.").

*Smith v. Wellpath*, No. 24-CV-2520, 2026 WL 1505679, at *5 (E.D. Pa. May 28, 2026)

Poff has not provided proof that she filed a proof-of-claim or opted out or objected to the Bankruptcy Court's confirmation order. *See Minges v. County of Berrien*, No. 1:23-cv-1308 (W.D. Mich. Nov. 5, 2025) (ECF No. 91), *report and recommendation adopted*, 2025 WL 3527715, 2025 U.S. Lexis 254825 (W.D. Mich., Dec. 9, 2025) (ECF No. 92) (dismissing Wellpath based upon the Southern District of Texas Bankruptcy Court order).

In her response brief, Poff asserts that she did not receive adequate notice. ECF No. 9, PageID.208 ("Wellpath did not in fact provide the required notice. It also appears that Wellpath never filed a Certificate of Service as required by the

[Bankruptcy] Order."). In its reply brief, Wellpath asserts that Poff is an unknown creditor who received sufficient notice by publication. ECF No. 14, PageID.234-35.

The undersigned recognizes that adequate notice is a fundamental aspect of due process. In *Mullane v. Cent. Hanover Bank & Tr. Co.*, the U.S. Supreme Court observed:

> An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.

*Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

Wellpath cites *In re City of Detroit* for an explanation of the type of notice that is required in this case. ECF No. 14, PageID.234-35. *In re City of Detroit* provides:

> Bankruptcy law distinguishes between known and unknown creditors. Unknown creditors may be notified by publication; but known creditors are entitled to actual notice. Known creditors are those whose claims or identities are "readily ascertainable" by the debtor. Readily ascertainable means a debtor, through "reasonably diligent efforts" could discover a creditor's claim. "Reasonably diligent efforts" does not require "impracticable and extended searches ... in the name of due process." Rather, a debtor must home in on its "own books and records." Typically, that means the debtor has something in its possession, either a "demand for payment" or "some communication with a debtor concerning the existence of the creditor's claim."

642 B.R. 807, 811 (Bankr. E.D. Mich. 2022) (quoting *Monson v. City of Detroit*, No. 18-10638, 2019 WL 1057306, at *9 (E.D. Mich. Mar. 6, 2019).

The record before this Court does not contain enough information for the Court to determine (1) whether Poff is a known or an unknown creditor based on the factors in *In re City of Detroit*, and (2) whether the notice she allegedly received by

publication or other means is sufficient. Accordingly, the undersigned does not offer an opinion on this point. If the Court were to find this issue to be determinative, then the undersigned would recommend additional briefing on the factors set forth in *In re City of Detroit*.

The problem here is that the question of whether Plaintiff had sufficient notice of her opportunity to opt out of the third-party release may only be addressed by the Bankruptcy Court, which retains jurisdiction over matters concerning Chapter 11 cases. *See Clayborne v. Godiwalla*, No. 24-3150, 2025 WL 3461719, at *1 (7th Cir. Oct. 28, 2025) ("the Bankruptcy Plan provides that any request for relief relating to service or the opt-out procedures must be raised in and resolved by the bankruptcy court"); *Smith*, 2026 WL 1505679, at *6 (collecting cases). Poff might have a viable argument regarding notice. But she needs to present that argument to the Bankruptcy Court.

Additionally, the undersigned interprets Poff's argument regarding insurance as proposing to leave Wellpath in the case as a nominal defendant. ECF No. 9, PageID.207. Again, Plaintiff has not asserted that she opted out or objected to the Bankruptcy Court Confirmation Order. Various courts in this district have considered similar issues and have reached various conclusions. *See Huffman v. Williams*, 2025 WL 2522965 (W.D. Ken. Sept. 2, 2025) (dismissing Wellpath after taking judicial notice of the Wellpath bankruptcy confirmation order); *Poronto v. Hoist*, 2025 WL 2700601 (E.D. Mich. Sept. 22, 2025) (recognizing that the Wellpath bankruptcy discharge renders the collection of a debt owed by Wellpath as

unenforceable, but allowing the case to proceed against Wellpath as a nominal party solely for the determination of liability); *Carr v. Wilkerson*, 2025 WL 2656043 (Sept. 16, 2025) (noting that if the Plaintiff had failed to opt out, the claims would be released and dismissed by the Court); *Gregory v. M.D.O.C.*, 2025 WL 2466029 (E.D. Mich. Aug. 26, 2025) (denying Wellpath's motion to dismiss without prejudice based upon bankruptcy confirmation order because too many questions were left unanswered in the motion).

Thus far, this Court has not opted to proceed with a case against Wellpath as a nominal party solely for liability determination. *See Lee v. Wellpath Corp.*, No. 2:24-CV-00039, 2025 WL 3898108, at *1 (W.D. Mich. Dec. 10, 2025), *report and recommendation adopted*, No. 2:24-CV-39, 2026 WL 36576 (W.D. Mich. Jan. 6, 2026); *Minges v. Cnty. of Berrien*, No. 1:23-CV-01308, 2025 WL 3528895, at *4 (W.D. Mich. Nov. 5, 2025), *report and recommendation adopted*, No. 1:23-CV-1308, 2025 WL 3527715 (W.D. Mich. Dec. 9, 2025).

Here, Plaintiff has not contested that she didn't opt out of the Confirmation Order. Additionally, Plaintiff has not presented a plausible allegation that insurance proceeds are available. *Thomas v. McFadden*, 810 F. Supp. 3d 732, 741-42 (W.D.N.C. 2025) (dismissing Plaintiff's claims for failure to provide a plausible allegation of the nature of Wellpath's coverage and a viable path to insurance coverage.) Accordingly, the undersigned respectfully recommends that the Court **grant** Defendant Wellpath's motion to dismiss based on bankruptcy.

Furthermore, regarding the individually named Defendants, Wellpath's Bankruptcy Confirmation Order and Plan includes a "Third-Party Release" concerning claims against Wellpath employees. As another district court has explained:

> Article IX of the Plan required plaintiffs such as Jackson to "opt out" of the Third-Party Release if they wish to preserve their claims against such employees. Article IX.F of the Plan provides that holders of claims subject to the Third-Party Release who did not opt out are permanently enjoined from "commencing or continuing any action or proceeding of any kind on account of or in connection with or with respect of" any released claims. Under the Plan, any Holder of a Claim who is or was an incarcerated individual had until July 30, 2025 to opt-out of the Third-Party Release.

*Jackson v. Smith*, No. 1:23-CV-00272-SPB, 2026 WL 1308870 (W.D. Pa. Apr. 16, 2026), *report and recommendation adopted sub nom. Jackson v. Wellpath*, No. CV 23-272, 2026 WL 1303028 (W.D. Pa. May 12, 2026).

Here, Plaintiff asserts that Dr. Jerkins and RN Thomas were medical professionals employed by Wellpath. ECF No. 1, PageID. 2-3. Plaintiff did not opt out of the Bankruptcy Confirmation Order that includes the Third-Party Release prior to the deadline. Several other courts have determined that dismissal of Wellpath employees is proper under the Confirmation Order when a plaintiff fails to opt out of the Third-Party Release. *Whiters v. Blaker*, No. 23-12161, 2026 WL 1679175, at *4 (E.D. Mich. June 10, 2026); *Boyd v. Adams*, No. CV 624-050, 2026 WL 165482, at *8 (S.D. Ga. Jan. 21, 2026) (collecting cases), *report and recommendation adopted*, No. CV 624-050, 2026 WL 627128 (S.D. Ga. Mar. 5, 2026). In the opinion

of the undersigned, dismissal of the Wellpath employees is proper under the Third-Party Release.

Accordingly, the undersigned respectfully recommends that the Court **grant** Defendants Jerkins and Thomas's motion to dismiss based on the Chapter 11 Plan of Reorganization.

**B. Failure to State a Claim**

Alternatively, Dr. Jerkins and RN Thomas argue that the claims against them should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim. Plaintiff asserts that Dr. Jerkins and RN Thomas were deliberately indifferent to her serious medical needs. It is unclear whether Plaintiff was a pre-trial detainee or incarcerated at the time of the alleged constitutional violations. Defendants assert Plaintiff was not convicted at the time of the alleged offenses, but Plaintiff does not confirm this assertion. Accordingly, the Court considers Plaintiff's claims under both the Eighth and Fourteenth Amendment standards.

Both "[t]he Eighth and Fourteenth Amendments are violated 'when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs—*e.g.*, food, clothing, shelter, medical care, and reasonable safety.'" *Griffith v. Franklin Cnty.*, 975 F.3d 554, 566 (6th Cir. 2020) (citations omitted). The application of the proper constitutional right depends on the nature of plaintiff's detention: the Eighth Amendment applies to convicted prisoners and the Fourteenth Amendment applies to pretrial detainees. *Id.* (citations omitted).

An Eighth Amendment claim has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994). To satisfy the objective component, the inmate must show that he or she faced a sufficiently serious risk to his health or safety. *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer*, 511 U.S. at 834). The subjective component requires an inmate to show that the defendant official acted with "deliberate indifference to [his] health or safety." *Id.* Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835.

Until recently, the Sixth Circuit "analyzed Fourteenth Amendment pretrial detainee claims and Eighth Amendment prisoner claims 'under the same rubric.'" *Greene v. Crawford Cnty.*, 22 F.4th 593, 605 (6th Cir. 2022) (quoting *Brawner v. Scott Cnty.*, 14 F.4th 585, 591 (6th Cir. 2021)). However, in *Kingsley v. Hendrickson*, the United States Supreme Court differentiated the standard for excessive force claims brought by pretrial detainees under the Fourteenth Amendment's Due Process Clause from those brought by convicted prisoners under the Eighth Amendment. 576 U.S. 389, 392-93, 135 S. Ct. 2466, 192 L. Ed. 2d 416 (2015). Specifically, the United States Supreme Court held "that a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Id.* at 396-97.

However, *Kingsley* left unanswered the question of "whether an objective standard applies in other Fourteenth Amendment pretrial-detainment context[s]." *Brawner*, 14 F.4th at 592. Subsequently, in *Brawner*, the Sixth Circuit modified the second prong of the deliberate indifference test applied to pretrial detainees to require only recklessness. *Id.* at 592, 596. At issue in *Brawner* was a pretrial detainee's claim for deliberate indifference to medical needs. The Sixth Circuit held that to show deliberate indifference, "[a] pretrial detainee must prove 'more than negligence but less than subjective intent—something akin to reckless disregard.'" *Id.* at 596-97 (quoting *Castro v. County of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc)); *see also Helphenstine v. Lewis Cnty., Ky.*, 60 F.4th 305, 316-17 (6th Cir. 2023) (affirming that *Kingsley*, as interpreted by *Brawner*, required courts to "lower the subjective component from actual knowledge to recklessness"). That is, a pretrial detainee must show that the defendant acted "deliberately (not accidentally), [and] also recklessly in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Brawner*, 14 F.4th at 596 (citation and quotation marks omitted). Further, a pretrial detainee must still show that he or she faced a sufficiently serious risk to his health or safety to satisfy the objective prong. *Hyman v. Lewis*, 27 F.4th 1233, 1237 (6th Cir. 2022) (stating that "Brawner left the 'objectively serious medical need' prong untouched"); *Helling v. McKinney*, 509 U.S. 25, 35, 113 S. Ct. 2475, 125 L. Ed. 2d 22 (1993) (applying deliberate indifference standard to conditions of confinement claims).

Additionally, Plaintiff asserts a state law claim for intentional infliction of emotional distress. This claim requires Plaintiff to show: (1) extreme and outrageous conduct; (2) intent or recklessness; (3) causation; and (4) severe emotional distress. *Jones v. Muskegon County*, 625 F.3d 935, 948 (6th Cir. 2010). Furthermore, "such conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Id.* (citation omitted)

Here, Defendants argue that Plaintiff's Complaint does not include sufficiently specific allegations to RN Thomas or Dr. Jerkins. Regarding RN Thomas specifically, Plaintiff's Complaint states:

> 28. That on September 5, 2022, Plaintiff began to experience vaginal bleeding and promptly infirmed Defendant Karen Thomas and requested medical assistance.
>
> 29. That Plaintiff immediately conveyed to Defendant Thomas that because she was bleeding vaginally and was Rh negative that she needed a RhoGAM injection, which was designed to prevent a spontaneous abortion of the fetus.

ECF No. 1, PageID.5.

Regarding the factual allegations concerning Plaintiff's claims against Dr. Jerkins, the Complaint states:

> 52. That during the entire pregnancy and during her bleeding episodes that led to the loss of the fetus, Dr. Jenkins never visited, treated, examined the Plaintiff for her serious medical condition.

*Id.*, PageID.8.

While Poff only names Dr. Jerkins and RN Thomas on a few occasions, she refers to "Defendants" collectively throughout the factual allegations. Poff asserts

that Defendants refused to transport her to the hospital for vaginal bleeding on September 5, 6, 7, and 8, 2022. ECF No. 1, PageID.5-6. Additionally, Poff claims that Defendants were informed that she went into labor on September 10, 2022, and refused to provide proper and necessary care. *Id.*, PageID.7. Poff says that she attempted suicide after the trauma inflicted by Defendants. *Id.*, PageID.8.

In the opinion of the undersigned, Poff's allegations are plausible and her use of "Defendants" collectively is specific enough to survive a Rule 12(b)(6) motion. Thus, the undersigned would not recommend dismissal of Poff's claims against the Wellpath employees for failure to state a claim. However, as explained above, the undersigned still recommends dismissal on the Chapter 11 reorganization grounds only.

**VI. Recommendation**

It is respectfully recommended that the Court **grant** Defendant Wellpath's motion to dismiss based on based on bankruptcy discharge, ECF No. 6, and Defendants Thomas and Jerkins's motion to dismiss based on Chapter 11 plan of reorganization, ECF No. 16. If the Court accepts this recommendation, no claims will remain.

Dated: July 20, 2026

/s/ Maarten Vermaat
MAARTEN VERMAAT
U.S. MAGISTRATE JUDGE

**<u>NOTICE TO PARTIES</u>**

Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich.

LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).